Good morning, your honors, Joe Elford, representing appellate Michael Teague. Michael Teague is an unfortunate victim of a tension between the state of California and its voters and the federal government and its policy on medical marijuana. The government contends otherwise, but there are two very important facts which do not bear out the government's contentions. The first is found at excerpts of record, pages 46 through 47, where the Court found in sentencing Teague that he was caught in the schism and confusion between California and federal law, and for that reason sentenced him to — gave him a two-level downward departure. Also, at Reporters' Transcript 81903 at page 69, the Court said, if you — if he turned out to be a dealer, you wouldn't have 60 months, you would have much more. And, of course, the judge did not sentence him to much more. Instead, he sentenced him to a term of imprisonment of 18 months. The other important fact, and one that the government has never explained, is the quantity — involves a quantity of marijuana at issue in this case. Michael Teague admitted that he cultivated 102 to 108 marijuana plants for his own personal medical use. As Judge Kaczynski pointed out in his concurring opinion in the Conant v. Walters case at 309F3-629 at page 646, footnote 10, United States attorneys, or rather the federal government, generally does not prosecute marijuana cases involving fewer than 500 plants cultivated indoors or 1,000 plants cultivated outdoors. And it remains a mystery why Mr. Teague was targeted for this prosecution, other than the fact that he was a medical marijuana patient, when he cultivated approximately five times fewer than that $500 figure — I mean, 500 plant figure cited by Judge Kaczynski. And this leads us to the Tenth Amendment issue. And the Tenth Amendment issue is one of commandeering. And it's one that, as Judge Kaczynski described in his concurring opinion in that case, involves a question about how the State wishes to expend its funds, and the Federal Government cannot force a State to expend its funds to enforce a Federal regulatory scheme. If the State disagrees, the Federal Government's solution is to ratchet up its own Federal regulatory policy. Here it was a State — it were State officials that conducted the investigation. It was a State warrant that was at issue. Because it was a State warrant, it was — the property then became the property of the State had no basis to take the fruits of that investigation, regardless whether one or two individual officers of the State may have consented. What is your authority for that, that officers of the State can't turn over evidence to the Federal Government, and they agree that it should be prosecuted as a Federal crime? The authority for that is a case called In Re Approximately 25 Grams of Marijuana from the Northern District of California, a Judge Patel opinion, wherein Judge Patel found that when State officers execute a State warrant, the property is returnable to the State court and is then the property of the State court. If the Federal Government wants to obtain that property, it must obtain a turnover order from the State court. And I am not aware of any such turnover order in this case. And the Tenth Amendment focuses — What about Raich? Does Raich read on this issue at all? Well, we concede that Raich certainly eliminates any Commerce Clause arguments that were made below. But it does not address the Tenth Amendment argument. The Ninth Circuit, this Court in Raich, expressly reserved on the Tenth Amendment question. Did Judge Patel hold that that was a violation of the Tenth Amendment? No, Your Honor. Judge Patel simply held that the property then ought to be returned to the State court and then furthermore later then returned to a gentleman named Chris Giacchi, who was the Petitioner in that case. That was a return-of-property case. Right. It was a — was it, what, a civil case, or? Well, it's a return-of-property, which is a quasi-civil criminal proceeding. Generally, they're considered special criminal proceedings. Right. But so I don't mean to suggest that — It wasn't a prosecution, criminal prosecution. Yes, Your Honor. And I don't mean to suggest — I don't mean to suggest that that case actually addressed the Tenth Amendment issue, nor did the Raich case. But the Tenth Amendment works as an external limit on the power of the Federal government to prosecute. And here, by taking the fruits of a State investigation, we would submit that this violated the Tenth Amendment. So I'd like to move on to the other issue in the appeal. And I would — before doing so, I would like to note that I think our primary issue in the appeal is the length of Michael Teague's supervised release. He has already served his entire sentence or his entire sentence of imprisonment, but he still has four years of supervised release hanging over his head. This was based on the district court's likely erroneous misunderstanding that this was the mandatory minimum. The government has conceded this issue, and so I won't belabor it. No point in arguing it. Exactly, Your Honor, which leads me to the other issue, the remaining issue, and that's the due process and the appellate delay. And that's that Michael Teague, as the publicity surrounding this case died down, Michael Teague was all but forgotten. And he ended up spending, because of a combination of errors of his court-appointed counsel and the court reporter, apparently a family emergency with the court reporter, Michael Teague ended up spending the entire — nearly the entirety, all but one week of his 18-month sentence before the transcripts were prepared for an appeal. He ended up then spending the entirety of his sentence before any appeal was filed. This stands apart from any other case that I have been able to locate or that the government has pointed out. That satisfies the prejudice criteria that must be met, or the prejudice criterion, and that is unusual anxiety and concern of the convicted party awaiting appeal. Michael Teague saw Keith Alden, a medical marijuana patient, released on bail pending appeal because their appeals had been filed and the Raich case then allowed them to be released on bail pending appeal. Michael Teague, however, was not released on bail pending appeal. He was a medical marijuana patient. Because his appeal had not been prepared in a timely fashion, who languished in prison, not knowing why his appeal was not being filed, not knowing when his appeal was going to be filed, and in the most unusual case of the appeal being rendered virtually meaningless, he served the entirety of his sentence before he was — before his appeal was filed. I do want to say one other thing on that issue, and that is that deals with the solution here. Because Michael spent the entirety of his sentence before being released on — before being — having his appeal being filed, the remedy ought to be outright dismissal of the indictment and no more further prosecutions. It would only compound what has already been a very unfortunate situation for Mr. Teague to force him to have to withstand another trial after he's already served the entire length of his sentence of confinement. So I would — I would submit that the appellate delay ought to result in the dismissal of these proceedings. Sotomayor, did we reach that question if we — what? If we agreed with you? What I — what we're requesting, Your Honor, is that the case, to the extent that there's any question of prejudice. I think the prejudice can be seen on the face of the facts as they're presented. But to the extent that there's any actual question about the degree of prejudice suffered by Mr. Teague, in the case of United States v. Mohawk, for instance, cited by the government, the solution there was a remand to the district court to determine the — That's what you would want? Well, I would only want that remand to occur if — with directions that the — that if sufficient prejudice is found, that the indictment be dismissed. What I would not want to see happen is for a remand to occur simply to find reversal of the convictions, thereby subjecting Michael Teague to a new trial, basically putting him at the starting point that he's already essentially come very close to the finish line. It would be completely unfair to him. Well, I guess procedurally I'm trying to understand. If — if — it's conceded that we have to send it back with respect to the supervised release. Yes, Your Honor. If we disagree with you that the prosecution violated the, you know, principles of federalism, then what is it that you want? Well, a remand to the district court to determine whether there is sufficient prejudice to order the dismissal of the indictment, to bar any future proceedings against Mr. Teague. So if the court found sufficient prejudice, it would reverse the convictions and dismiss the indictment with the understanding that there would be no further proceedings against Mr. Teague. But what we would not want to see — I guess I'm not understanding why there would be any further proceedings. Potentially, the government could reindict Mr. Teague and then have another trial and force him to have to go through the entire process again. There's two possible solutions that this Court could give for appellate delay. One is simply reversal of the conviction in a new trial. The other would be reversal of the convictions and dismissal of the indictment. Okay. I see. And we would be asking only for that latter solution. And I would like to reserve my remaining 30 seconds for rebuttal. Thank you. Good morning, Your Honors. Andrew Stolper on behalf of the government. There were three issues in the initial appeal. Obviously, we've agreed that the supervisor release question ought to be remanded to the district court. I'll first move on to the Tenth Amendment concerns. Briefly, the defendant has raised two Tenth Amendment issues. One is a general issue that somehow Congress, by exercising one of its enumerated powers under the Commerce Clause with regards to the Controlled Substances Act, has somehow violated a Tenth Amendment right. As we've briefed pretty extensively, there's no basis for that under both Musari and U.S. v. Jones. With regard to the commandeering question, in both Prince and Conant, the commandeering issue required the government make the State do something. And in this case, there's no factual, there's nothing in the record to suggest that the Federal authorities made the State do anything. And, in fact, the record's quite to the Federal authorities for prosecution. The root of the commandeering doctrine is the word command, and the Federal authorities have commanded the State to do nothing in this case. Finally, there's the question of appellate delay. And first, I want to just spend a minute talking about the length of the delay and where the blame ought to be ascribed. It was a 16-month sentence. And it's important to note that when the defendant started the case, he had a retained attorney. And that he was remanded, the defendant was remanded in August of 2003, and for the first four months of his sentence, he had appointed counsel. And that appointed counsel evidently did not designate all the transcripts that he was supposed to. And so in January, when the appointed counsel shifted to being, sorry, when the retained counsel shifted to being appointed counsel, and it's important to note it was the same attorney, a man by the name of J. David Nick, he shifted from being the retained counsel and then got appointed pursuant to CJA to being the appointed counsel, that at that point in time, that was in January of 2004, it wasn't until April of 2004 that a designation of five or, sorry, I'm sorry, six additional transcripts were designated by that now appointed counsel. But I think it's important to note that we're now eight months into the defendant's sentence, and had retained counsel done the proper designation when he was supposed to, then in theory the transcripts would have all been prepared at that point in time. And so beginning in April, until when now appointed counsel designated those transcripts in April, this Court ordered those transcripts be prepared in June of 2004. That's ten months into the defendant's sentence. And I think that looking at the record closely, it's really only fair to ascribe that period after the defendant's transcripts are fully prepared to or should have been fully prepared to the government. And here it was really the mistakes of the appointed counsel at the very beginning of the defendant's sentence that led to the vast majority of the appellate delay. Kennedy, I think you meant again to say retained counsel. I'm sorry. The retained counsel. I apologize. The final question, of course, is whether or not, and the only question is whether or not, that six months of delay rises to the level of being a due process violation. And this issue has been addressed by this Court, and it's been addressed by this Court sitting in Bont in Tucker, where the Court said the most important thing that one looks at to determine if there's been a due process violation is prejudice. And that prejudice is either in the form of a meritorious appeal or alternatively in the form of some type of oppressive incarceration. Now, the argument that's been made that Mr. Teague's incarceration was more oppressive is this notion that he thought he was going to get acquittal appeal and it was going to be meritorious. I would suggest the record does not support that argument in the following regard. The defendant filed for motion — filed motions for bond pending appeal not once, not twice, but three times. The district court and the motions panel of this Court three times concluded that the defendant's appeal was neither meritorious and nor was it important for him to be released for that appeal, nor was it important for him to be released on appeal — excuse me — nor was it important for him to be released on bond pending appeal. So the notion that the defendant somehow believed that he was going to be getting out, that that release was going to be eminent, simply isn't supported by the fact that the defendant continued to file motions for bond pending appeal and was continually told, no, that's not going to happen. And while the defendant, I'm sure, hoped he would be released, that mere hope doesn't rise to the level of being an oppressive — oppressive incarceration. I'm certain that all folks who are — who are incarcerated hope, for whatever reason, that they're going to get released. Tucker has some — some language in it that I think is really important to this — to this case. Even assuming that the court reporter's dilatory conduct violated some right of Tucker, a right we've been unable to identify, Tucker was not entitled to have his conviction reversed and his case remanded for dismissal of the indictment. As we discussed above, a federal court may not exercise its supervisory powers to reverse a conviction absent a showing of prejudice. Tucker violated the law and was sent guilty at a fair trial. In this situation, Mr. Teague all but stipulated to his guilt at a fair trial, and there's no reason — there's no reason to believe that his incarceration was any more oppressive than it is for any other — any other — any other — any other defendant. Kennedy. Does the record explain why his motions for bail on appeal were denied? Wessler. No. The — the motions for bail on appeal, the first two motions for bail on appeal, were made solely on the basis of a Commerce Clause challenge. While race was pending before the Supreme Court. The record does suggest that Mr. Teague was distributing marijuana, which I think undermined the — and the district court found that the defendant was, quote — and I'll just read what the district court's findings are in the government's excerpt — a record at 7. You received donations and you think I'm dumb. Donations or sales? And we'll discuss that in just a moment. Donations or sales? You can call it what you like, but it's an absolute sale. And so I don't think that — and this is my — I'm supposing here, but I doubt that the motions panel concluded that someone who's distributing marijuana falls under the rate what — what was argued in Raich that purely interstate growth of marijuana for personal use was somehow exempt from commerce. It's also important to note that in neither of the defendant's first two motions for bond pending appeal did he raise this notion of a due process concern with respect to the delay. It was only in his final motion for bond pending appeal, which was filed shortly before he was released, that this issue first was raised. And even in light of this issue, the motions panel declined to release the defendant on bond pending appeal. Did the government resist bail on appeal? It did, Your Honor. Was there any reason for that? Yes, Your Honor. The government felt the defendant's appeal was not meritorious and that he ought to serve the — But they didn't argue that he was a danger to society or a flight risk or anything like that, did they? No, Your Honor. The government merely argued the presumptions contained within the statute that the defendants convicted of drug offenses ought to be incarcerated pending appeal. The government — Unusual bureaucratic response to this motion. The — unless the Court has any additional questions, the government will submit. Thank you. Briefly, Your Honors, the reason why the bail pending appeal in all likelihood was denied is because they're routinely denied where the appeal itself hasn't been filed. That's what distinguished Mr. Teague from Mr. Zaldin and Mr. Eppes, both medical marijuana patients whose Commerce Clause challenges did warrant their bail pending appeal. In terms of the Tenth Amendment argument, I would just briefly like to submit, we don't know whether — how much coercion was involved in the Federal Government assuming jurisdiction over this case. We don't know if they pressured the State. Given that this case must be remanded on these — on at least one other issue, I would simply request that it be remanded to determine the circumstances under which the Federal Government assumed jurisdiction over this case to determine the Tenth Amendment argument. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Goodwin, Fisher